FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

97 AUG -5 PM 12: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

AUG  5 1997

| | |
|---|---|
| LINDA BARNETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CV 97-PT-1216-E |
| | ) |
| SYLACAUGA AUTOPLEX, et al., | ) |
| | ) |
| Defendants. | ) |

Memorandum Opinion

This cause comes on to be heard on plaintiff's motion for remand filed on May 20, 1997. In her motion, the plaintiff argues that exercise of jurisdiction over the instant case is improper because (1) Chrysler Financial Corporation's removal of her case was premised upon diversity of citizenship and, therefore, came outside of the one-year time limitation on removal stated in 28 U.S.C. § 1446(b) and (2) no complete diversity of citizenship under 28 U.S.C. § 1332(a) exists between the plaintiff (and the prospective class she represents) and one of the defendants, Sylacauga Autoplex, Inc. ("Autoplex"), because both are citizens of Alabama.

The plaintiff, Linda Barnett, commenced the present action on June 22, 1995, in the Circuit Court of Talladega County, Alabama, on her own behalf and on behalf of a putative class of individuals who entered into retail installment contracts with Autoplex. These contracts were allegedly assigned to the other defendant, Chrysler Financial

Corporation ("Chrysler Financial"). In her initial complaint, the plaintiff averred that, with respect to her, the defendants committed fraud, suppression and breach of contract, and argued that agents of Autoplex made fraudulent representations to the plaintiff and other class members who had financed their automobiles through Autoplex, and sought an unspecified amount in punitive and compensatory damages.

On April 17, 1997, the plaintiff amended her complaint to expand the class represented by her not only to include any individual who had entered into retail installment contracts through Autoplex, but any individual in Alabama who had financed the purchase of a vehicle through Chrysler Credit Corporation (which presently operates as Chrysler Financial). On May 16, 1997, in response to the plaintiff's amendment, Chrysler Financial filed a notice of removal. Chrysler Financial contends that for the putative class members recently added to the suit, Autoplex is fraudulently joined. Chrysler Financial argues that, for this reason, diversity exists among the new class members and the sole properly joined defendant, Chrysler Financial. Therefore, as to the new class members, Chrysler Financial argues that diversity jurisdiction exists under 28 U.S.C. § 1332, permitting removal. As to the representative plaintiff and remaining putative class members, Chrysler Financial holds no preference as to whether they should also be brought before this court on exercise of supplemental jurisdiction under 28 U.S.C. § 1367 or left to state court without the expanded class. See Arnold v. Ford Motor Co., CV 95-PT-0073-M (N.D. Ala. May 2, 1995) and McGrew v. Superior Oldsmobile-Buick, Inc., 96-PT-3104-E (N.D. Ala. February 19, 1995).

Section 1446(b) of Title 28 limits the time for removal of actions based upon diversity of citizenship to one year from the commencement of the action in state court. The statute states:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not

>required to be served on the defendant, whichever period is shorter.
>
>If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that <u>a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action</u>. (Emphasis added).

The instant action was not initially removable when filed in the state court. However, the plaintiff amended her complaint to include class allegations arguably supporting diversity jurisdiction twenty-three months after the action was initially filed. Chrysler Financial filed its notice of removal within a month after that amendment.

The plaintiff argues that because her amended complaint was made twenty-three months after the action was initially filed, Chrysler Financial's basis for removal was born outside of the one-year removal limitation period for diversity actions. Therefore, the removal, she contends, is barred. Chrysler Financial offers two reasons why the limitation should not prevent removal of the instant case. First, Chrysler Financial argues that the action was commenced as to the new putative class members when the amended pleading was filed and, therefore, the one-year removal period as to those putative class members began to run on the filing of the amended complaint. Second, Chrysler Financial avers that, even if the commencement of the action occurred when the original complaint was filed, the plaintiff's bad-faith amendment outside of the one-year filing period equitably estops the plaintiff from asserting the one-year procedural bar.

>When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court, 28 U.S.C. § 1441(a), provided that no defendant "is a citizen of the State in which such action is brought," § 1441(b). In a case not originally removable, a defendant who receives a pleading or other paper indicating the post-commencement satisfaction of federal jurisdictional requirements--for example, by reason of the dismissal of a nondiverse party-- may remove the case to federal court within 30 days of receiving such information. § 1446(b). <u>No case, however, may be removed from state to federal court based on diversity of citizenship "more than 1 year after</u>

3

commencement of the action." Ibid.

Caterpillar, Inc. v. Lewis, --- U.S. ---, 117 S.Ct. 467, 472-73 (1996) (emphasis added). The Supreme Court's language in Caterpillar is absolute, allowing no exclusions. Expressions of Congressional intent are equally unrelenting:

> Subsection (b)(2) amends 28 U.S.C. S 1446(b) to establish a one-year limit on removal based on diversity jurisdiction <u>as a means of reducing the opportunity for removal after substantial progress has been made in state court</u>. The result is a modest curtailment in access to diversity jurisdiction. The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court. The elimination of parties may create for the first time a party alignment that supports diversity jurisdiction. Under section 1446(b), removal is possible whenever this event occurs, so long as the change of parties was voluntary as to the plaintiff. Settlement with a diversity-destroying defendant on the eve of trial, for example, may permit the remaining defendants to remove. <u>Removal late in the proceedings may result in substantial delay and disruption</u>.

H.R.Rep. No. 100-889 at 72, 1988 U.S.C.C.A.N. 5982, 6032-33 (emphasis added). The Eleventh Circuit Court of Appeals commented upon the one-year removal limitation in Burns v. Windsor Ins. Co, 31 F.3d 1092, 1097 n.12 (11th Cir. 1994), observing that:

> [t]he Commentary to the 1988 Revisions of 28 U.S.C. § 1446(b) shows that congress knew when it passed the one year bar on removal that some plaintiffs would attempt to defeat diversity by fraudulently (and temporarily) joining a non-diverse party. In that case, as long as there is some possibility that a non-diverse joined party could be liable in the action, there is no federal jurisdiction. But, under section 1446(b), if, after one year, the plaintiff dismisses the non-diverse defendant, the defendant cannot remove. So, a plaintiff could defeat jurisdiction by joining a non-diverse party and dismissing him after the deadline. Congress has recognized and accepted that, in some circumstances, plaintiff can and will intentionally avoid federal jurisdiction.

In Singh v. Daimler-Benz AG, 9 F.3d 303, 309 (3d Cir. 1993), the Third Circuit Court of Appeals stated:

> The 1988 Act also contained several provisions relating to procedure in removal of cases from state to federal court, but even those will not necessarily reduce diversity cases in a significant measure. The Act imposed an absolute one year time limit to remove a case from state to federal court on the basis of diversity of citizenship, see § 1016(b)(2)(B), 102 Stat. at 4669 (codified at 28 U.S.C. §

4

> 1446(b)), thereby changing the prior procedure permitting a case to be removed after the claims against defendants whose presence destroyed complete diversity were dismissed or dropped. While acknowledging that this provision would produce "a modest curtailment in access to diversity jurisdiction," the House Report emphasized instead that the change would prevent "removal after substantial progress has been made in state court." H.R.Rep. No. 889, supra at 72, reprinted in 1988 U.S.C.C.A.N. at 6032.

Finally, in an en banc sitting,[1] the District Court of the Northern District of Alabama noted that "Congress intended [the one-year limitation] to be strictly enforced." Greer v. Skilcraft, 704 F. Supp. 1570, 1577 n.6 (N.D. Ala. 1989) (en banc). Generally, therefore, an attempt to gain access to the federal courts in a diversity action one year after the filing of a suit (or after service of process in the suit is effectuated) is blocked.

Because the one-year limitation on removal begins to run on the "commencement of the action," Greer v. Skilcraft, 704 F. Supp. at 1582-83 (N.D. Ala.1989), much litigation has materialized around the issue of when an action is commenced. See generally, Id.; Zumas v. Owens-Corning Fiberglass Corp., 907 F. Supp 131, 132 (D. Md. 1995); Perez v. General Packer, Inc., 790 F. Supp. 1464, 1469 (C.D. Cal.1992); Saunders v. Wire Rope Corp., 777 F. Supp. 1281, 1283 (E.D. Va.1991); Santiago v. Barre Nat., Inc., 795 F. Supp. 508, 510 (D. Mass.1992); and Rezendes v. Dow Corning Corp., 717 F. Supp. 1435, 1437 (E.D. Cal.1989). Chrysler Financial proposes the somewhat novel theory that the present action commenced for the new putative class members upon the plaintiff's amendment of her complaint. The plaintiff contends that Judge Pointer's order in Nalls v. United Companies Lending Corp., CV 96-P-1295-S (N.D. Ala. Aug. 6, 1996), addressed Chrysler Financial's theory and found it wanting. However, Judge Pointer's succinct order in Nalls is silent on whether Chrysler Financial's argument was ever raised or considered.

When an action has been "commenced" is a question of state law. Zumas v. Owens-Corning Fiberglass Corp., 907 F. Supp at 132; O'brien v. Powerforce, Inc., 939 F. Supp. 774, 777 (D. Hawai'i 1996). See also, Greer v. Skilcraft, Inc., 704 F. Supp. at

---

[1] In which this judge participated.

1583. Rule 3 of the Alabama Rules of Civil Procedure states that a "civil action is commenced by the filing of a complaint with the court." However, for a party added in a suit by a later amended complaint, commencement of the action as among the new party and the original parties may come at the time the complaint is amended. See Corbitt v. Mangum, 523 So.2d 348, 350-51 (Ala. 1988). This is most clearly seen when a new party is added to litigation outside of the statute of limitations. Under Alabama law, the statute of limitations for a particular action determines the time period within which an action must be "commenced" before the right to pursue the action is extinguished. See Ala. Code of 1975 §§ 6-2-1, et seq. (setting limitations periods on commencement of actions). However, under Alabama law, when a plaintiff attempts to join a new party to a suit by amended complaint outside of the statute of limitations period, the action against the new party will often be barred by the statute of limitations. Were it the case that the action, as related to the new party, always commenced at the time of the initial complaint, then no statute of limitations problem would arise with respect to that party. Instead, the filing of the amended complaint transforms a new party's cause of action into genuine action, commencing it before the court at the time of amendment. McDowell v. Henderson Mining Co., 160 So.2d 486, 488 (1963). Therefore, an amended complaint adding a new party will often commence the action for that party. In cases in which the statute of limitations is relevant, the amendment will occur outside of the limitations period and commencement will come too late.

  Alabama law has, however, developed a mechanism by which an occasional party who is added to a suit outside of the statute of limitations period will not be dismissed for failing to commence the action within the limitations period. Under Rule 15(c) of the Alabama Rules of Civil Procedure, if the addition of a new party relates back to the filing of the original suit, the action is commenced for a new party <u>at the time the original plaintiff initially filed her complaint</u>. Cummins Engine Co. v. Invictus Motor Freight,

Inc., 641 So.2d 761, 764 (Ala. 1994).[2]

Alabama law has developed a number of rules governing when an action is commenced, usually in cases involving the statute of limitations. Because Alabama law on commencement of actions governs when an action is commenced under § 1446(b), the court will therefore apply the rules governing the commencement of actions (especially with respect to new parties) to decide if an action has commenced for purposes of one-year limitations period for removal in diversity actions. On the one hand, if an amended complaint relates back to the filing of the initial complaint, the one year bar for removal of actions will have begun to run from the initial filing, not the later amendment. On the other, if an amended complaint does not relate back, the one-year limitation for the defendant's removal of a new action will accrue from the time of the filing of the amended complaint.

Rule 15(c) of the Alabama Rules of Civil Procedure provides when an amendment will relate back to the date of the filing of the complaint:

> An amendment of a pleading relates back to the date of the of the original pleading when...
>> (3) the amendment... changes the party or the naming of the party against whom a claim is asserted if [the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading] and, within the applicable period of limitations or one hundred twenty (120) days of the commencement of the action, whichever comes later, the party to be brought in by amendment (A) has received notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party...

---

[2] Chrysler Financial, in a supplemental letter addressed to this court, argues that "relation back" is not proper under Federal Rule of Civil Procedure 15(c). However, with respect to the present action, Alabama law is decisive on the issue of "relation back," not federal law. In addition, the two cases cited by Chrysler Financial, Summit Office Park, Inc. v. United States Steel Corp., 639 F.2d 1278 (5th Cir. Unit A 1981) and In re Syntex Corp. Securities Litigation, 855 F. Supp. 1086 (N.D. Cal. 1994), are not dispositive of the issue. In both Summit and Syntex, the added plaintiffs shared no identity of interest with the original plaintiffs. This is not the case here. All couch their claims on the same legal theory and, unlike the original plaintiffs in Summit, the putative members of original plaintiff class in this case have viable claims.

7

In <u>Bank of Red Bay v. King</u>, 482 So.2d 274, 279-80 (Ala. 1985), the Alabama Supreme Court adopted the test stated in <u>Manning v. Zapata</u>, 350 So.2d 1045 (Ala. Civ. App. 1977), which addressed whether and when a complaint amended to add new plaintiffs would relate back:

> In <u>Manning v. Zapata</u>, 350 So.2d 1045 (Ala. Civ. App. 1977), the Court of Civil Appeals followed <u>Board of Water and Sewer Commissioners of City of Mobile v. McDonald</u>, [] 322 So.2d 717, <u>cert. denied</u>, 295 Ala. 392, 322 So.2d 722 (1975), in concluding that Rule 15(c) can be applied by analogy to amendments changing plaintiffs. That court explained:
>
>> "The applicability of Rule 15(c) to amendments seeking to add new plaintiffs is put in its proper perspective in 6 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1501, at 523-24:
>>
>>> "'Although Rule 15(c) does not expressly apply to a new pleading adding or dropping plaintiffs, the Advisory Committee Note to the 1966 amendment of the rule indicates that the problem of relation back generally is easier to resolve in this context than when it is presented by a change in defendants and that the approach adopted in Rule 15(c) toward amendments affecting defendants extends by analogy to amendments changing plaintiffs. <u>As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense</u>. This seems particularly sound inasmuch as the court will require the scope of the amended pleading to stay within the ambit of the conduct, transaction or occurrence set forth in the original pleading. [Emphasis in original.]
>>>
>>> "'The courts seem to concentrate on the <u>notice</u> and <u>identity of interest</u> factors as they do in the case of amendments changing defendants. Thus, any amendment substituting a new plaintiff has been held to relate back if the added plaintiff is the real party in interest. . . .'
>>
>> "<u>We further note that it has been held that an amendment adding a new party does relate back when the old and new parties have such an identity of interest so that such relation back would not be prejudicial</u>. <u>Williams v. United States</u>, 405 F.2d 234 (5th Cir.1968); 3 MOORE'S FEDERAL PRACTICE, 2d ed., at 1043-45; 6 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, at 524. [Emphasis added.]

> "The standard which courts use in determining if an identity of interest exists, so as to allow relation back, is set out in 3 MOORE'S FEDERAL PRACTICE, footnote 11, at 1044-45:
>> "'Courts articulating the "identity of interest" standard generally require a substantial relationship between the old and new parties with regard to the litigation, as well as a sufficiently analogous legal position within the lawsuit to preclude the assertion of a new cause of action. Many of these cases involve substituting or adding related corporations. . . .'"

350 So.2d at 1047. The court in Manning went on to hold that, in a subrogation suit, an amendment, which substituted the insurer (Standard Fire Insurance Company) who actually paid the insured's claim for the insurer who initiated the proceedings (All Risk Insurance Company), related back. That court reasoned that <u>because (1) there was the requisite "identity of interest," (2) the claim arose out of the same conduct, transaction, or occurrence as set forth in the original complaint, and (3) the defendant was given notice when the initial complaint was filed, the defendant was, therefore, not prejudiced by the amendment and it should relate back</u>.

See also, English v. State, 585 So.2d 910, 911-12 (Ala. 1991) (emphasis added).

In the instant case, an identity of interest exists between the old and new parties to the litigation. The added putative class members share the same interest as the old class members in interpretation of Chrysler Financial's financing arrangements. Both old and new putative class members seek a determination of whether Chrysler Financial created documents which represented that they were being charged a finance charge and which hid the existence of a percentage earned on the finance charge by auto dealers who financed through Chrysler Financial. Finally, the new putative class members share the same legal position as the original putative class members — that is, that Chrysler Financial fraudulently misrepresented the content of its finance agreements.

Chrysler Financial was not prejudiced by the amendment. Chrysler's defense to the claims of the new class members will be the same as that raised against the prior class members and will not require any substantial alteration.

The third requirement is that the claims of the new class members arise "out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the

original pleading." An action will not arise out of the same "conduct, transaction or occurrence" if it grows out of different events than those events that are stated in the original complaint. McClendon v. City of Boaz, 395 So.2d 21, 26 (Ala. 1981). The determination of whether different events are involved depends on whether "[t]he acts that form the basis of the [added actions] were distinctly different, both in time as well as in regard to conduct, from the acts that formed the basis of [the original action filed by the original plaintiff(s)]." Malcolm v. King, 686 So.2d 231, 236 (Ala. 1996) (emphasis added).

The events creating each new putative class member's claim is disparate in space and time from the events which give rise to each other class member's claim. The conduct on the part of defendant Chrysler Financial is, however, not different for each member of the putative class. Both the original class and the new class premise their claims on the same fraudulent conduct in which Chrysler Financial allegedly engaged — the promulgation of fraudulent financing agreements. Therefore, the extension of the plaintiff's putative class through amendment relates back to the time of the filing of the initial complaint. Chrysler Financial's attempts to remove the action on the basis that the amended complaint commenced an action afresh for the new putative class members falter. Because the amendment relates back to the time of the filing of the initial complaint in state court, the one-year limitation on removal began to run at the time of the original filing.

Chrysler Financial suggests as a basis for permitting removal of the entire class that the plaintiff's amendment expanding her putative class was made in bad faith and that she is therefore estopped from asserting the one-year limitation. This argument is not novel and has been presented with varying degrees of success in the district courts. See Kinabrew v. Emco-Wheaton, Inc., 936 F. Supp. 351, 352 n.1&2 (M.D. La. 1996) (listing the positions of various district courts on the issue of waiver and estoppel with regards to the one-year time limit on the removal of diversity cases). The Eleventh Circuit Court of Appeals has held that the one-year bar on removal is a procedural bar, not a jurisdictional limitation. Wilson v. General Motors Corp., 888 F.2d 779, 781 (11th Cir. 1989). Because

10

it is merely a procedural limitation, the bar can be waived — for example, when a plaintiff fails to file a motion for remand within the thirty day time period required by 28 U.S.C. § 1447(c).  See Id. at 781 n.1.  A plaintiff can also be estopped from raising the one-year bar based upon equitable considerations.  For example, a plaintiff who makes no bona fide effort to serve a complaint upon the defendant until the one year period has run will be estopped from asserting that the commencement of the action occurred upon the filing of the complaint.  Greer v. Skilcraft, 704 F. Supp. at 1583.

Chrysler Financial argues that the addition of the putative class members outside of the one-year limitations period is in bad faith and that the present plaintiff, like the plaintiff in Greer, should be estopped from presenting the one-year limitation as a bar to removal.  In support of its position, Chrysler Financial cites to Morrison v. National Benefit Life Ins. Co., 889 F. Supp. 945 (S.D. Miss. 1995).  In Morrison, the plaintiff amended his complaint seven days after the running of the limitation on removal to increase the damages he sought from $49,000.00 to $2,000,000.00.  Id. at 946-47.  The district court found that the plaintiff concealed the damages he actually sought beyond the limitations period with the intent that the defendant rely upon the limited damages and not attempt to remove the case.  Id. at 950.  Because of the limitation, the defendant detrimentally relied upon the falsely represented damages and did not exercise his right of removal within the one-year period.  Id.  Applying principles of equitable estoppel existing under Mississippi law, the district court estopped the plaintiff from raising the one-year limitation on removal as a bar to the defendant's attempt to remove the case.  Id.

The plaintiff contends that the present case is more akin to a situation in which a plaintiff amends her complaint to raise the amount in controversy sufficient to permit removal after the one-year limitation period has passed or in which a plaintiff fraudulently joins non-diverse defendants and removes them from the suit after the one-year bar has run.  According to the plaintiff, Congress, in amending § 1446(b), took both situations into account and stated that the consequent reduction in diversity jurisdiction was unfortunate but permissible.  The plaintiff states that these are both examples of bad faith pleading, but which nonetheless do not estop the plaintiff from raising the one-year

11

limitation. See Burns v. Windsor Ins. Co., 31 F.3d at 1097 n.12. The court agrees with the plaintiff's account of § 1446(b)'s history, but does not agree that it compels the result that the plaintiff desires.

The key to whether a plaintiff will be estopped from raising the one-year limitation on removal is whether the defendant should have been on notice that the plaintiff would take action subsequent to the one-year limitations period that would bring the case within the diversity jurisdiction of the federal courts. See Morrison v. National Benefit Life Ins. Co., 889 F. Supp. 950; Kinabrew v. Emco-Wheaton, Inc., 936 F. Supp. at 353; Leslie v. Banctec Serv. Corp., 928 F. Supp. 341, 346 (S.D. New York 1996); Kite v. Richard Wolf Medical Instruments Corp., 761 F. Supp. 597, 600 (S.D. Ind. 1989).[3] This is so whether or not the defendant could actually remove the case at the time he had notice. Russaw v. Voyager Life Ins. Co., 921 F. Supp. 723, 725 (M.D. Ala. 1996). A defendant who should have been on notice could have attempted to remove, if there was a basis for removal. If no basis for removal existed, the defendant could have filed a motion for more definite statement under Rule 12(e) of the Alabama Rules of Civil Procedure on the basis that the plaintiff has fraudulently joined certain parties to the suit or pled beneath the amount she actually seeks (or any other facts that would provide the federal courts with jurisdiction). If an order requiring the plaintiff to amend the complaint in accordance with the defendant's request issues, the defendant can remove once the complaint is amended and removal is clearly proper. Or, if the plaintiff does not amend the complaint to bring it within the diversity jurisdiction of the court, the defendant may raise judicial estoppel when the plaintiff attempts to amend her complaint in the future in such a way as would have brought her claims within a federal court's jurisdiction if bad faith exists.

Notice exists when the possibility of removal can be inferred from the face of the complaint, as is the case when the plaintiff pleads a claim which of necessity would require the plaintiff to receive more that $75,000.00 in damages, or when facts outside the

---

[3] Because § 1446(b) is a federal statute, any equitable exclusions to the statute are to be developed under federal, not state, law. Therefore, Alabama law on equitable estoppel is inapposite to the determination to estop the plaintiff from asserting the one-year bar.

complaint would alert a reasonable defendant that something is amiss, as is often the case with joinder that is fraudulent due to a clear factual impossibility.[4]

In Morrison, the defendant was "ignorant of the actual damages sought, since its only source of information on this point was Plaintiff's averments." Morrison v. Nat'l Benefit Life Ins. Co., 889 F. Supp. at 950. Further, in that case, the plaintiff unequivocally denied in response to interrogatories by the defendant that he sought more than $49,000.00 in damages. Therefore, the defendant had no reason to suspect that the plaintiff would raise the amount of damages stated to $2,000,000.00 and attempt to remove or seek a motion for more definite statement under the Mississippi Rules of Civil Procedure. Id.

Similarly, during the year after the filing of the plaintiff's complaint, Chrysler Financial was without notice that the plaintiff would, in the future, increase the scope of her class claims. The original complaint gives no hint of claims being brought by a putative class of all individuals who financed auto purchases through Chrysler Financial. In addition, Chrysler Financial does not know of any discovery in which the plaintiff has engaged that would potentially change her position.

Chrysler Financial not only must demonstrate that it had no notice of the future change in the plaintiff's position, but also must demonstrate that the plaintiff changed her position in bad faith. Greer v. Skilcraft, 704 F. Supp. at 1583. In the present case, the plaintiff's claims are in bad faith if, by her actions, she attempted to disguise the existence of the removability of the case until the one-year limitation had run. See Morrison, 889 F. Supp. at 950. Bad faith can generally be inferred from amendment outside of the of the statutory bar. See Kinebrew v. Emco-Wheaton, 936 F. Supp. at 353. The plaintiff has provided no justification to negate the inference.

Finally, the history of § 1446(b) indicates that the one-year limitation on removal is meant to avoid "substantial delay" in the resolution of cases and to prevent "removal after

---

[4] Or when the defendant determines, during discovery, that the plaintiff will later be required to amend her complaint to obtain the relief she seeks.

substantial progress has been made in state court." House Rep. No. 100-889 at 72, 1988 U.S.C.C.A.N. at 6032-33. If proceedings in state court have made significant progress toward trial or if substantial delay would result in removal of the action to federal court, removal should not be available to the defendant, regardless of the plaintiff's actions. There would be no substantial delay in the resolution of the present action if removal were permitted, nor would have the proceedings made substantial progress toward trial. Little, if any, discovery has been completed. No significant activity has occurred in the case since its filing. The new class has not been certified by the state court and no difficulties in revisiting class issues will therefore arise from removal. Therefore, the plaintiff is estopped from raising the one-year limitation as a bar to removal of the present action by Chrysler Financial.

The plaintiff asserts that even if the one-year limitation on removal in diversity cases does not prohibit Chrysler Financial's removal of the present action, there is no diversity of citizenship to support this court's jurisdiction because the plaintiff and putative class are not diverse from defendant Autoplex. Chrysler Financial argues that, with respect to many of the statewide class members who have claims against Chrysler Financial, joinder of Autoplex is fraudulent and Autoplex should be dismissed as a defendant for the putative class members who can only assert claims against Chrysler Financial. If Autoplex is dismissed for those putative class members, contends Chrysler Financial, complete diversity will exist between those class members and it, allowing this court to exercise jurisdiction over the claims of those class members.

In Arnold v. Ford Motor Co., CV 95-PT-0073-M (N.D. Ala. May 2, 1995), and later, in McGrew v. Superior Oldsmobile-Buick, Inc., 96-PT-3104-E (N.D. Ala. February 19, 1995), this court held that "joinder of a defendant non-diverse from the named parties but against whom a significant number of the class members could state no claim was fraudulent. . ." McGrew, 96-PT-3104-E at 2. In the present case, most of the claims against Chrysler Financial were not based upon financial agreements issued by Autoplex, but were issued at other automobile sales companies. For those putative class members

who did not enter into a finance agreement at Autoplex, "there is no possibility the plaintiff can establish any cause of action against" Autoplex. Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). For a substantial number of the class members, the suit against Autoplex is fraudulent.

Because the newly added members to the plaintiff's putative class have no claim against Autoplex, their claims were properly removed to this court. This court must also determine whether it may exercise supplemental jurisdiction over the named plaintiff and the remaining putative class members, for whom Autoplex was not fraudulently joined. The court first notes that the one year time limitation on removal stated in § 1446(b) would not bar removal of the remaining claims more than one year after commencement of the action, because § 1446(b), by its language, only bars removal based upon diversity jurisdiction, not removal premised upon supplemental jurisdiction.

As this court stated in McGrew, exercise of supplemental jurisdiction is proper over claims that "form part of the same [Article III] case or controversy" as those claims over which it has original jurisdiction. 28 U.S.C. § 1367(a); McGrew, CV 96-PT-3104-E at 5. Class claims, even those against the same defendant and articulating the same legal theory for recovery, may not be part of the same Article III case or controversy. Id. Whether the claims of the class members share common questions of law or fact is not the test for whether those claims form part of the same case or controversy. Id.

What is meant by the terms "same case or controversy" has varied from circuit to circuit. The Sixth Circuit Court of Appeals stated that a state claim is part of the same case or controversy as a federal claim if it arises out of the same transaction or occurrence as the federal claim. Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 233 (6th Cir. 1997). In Baer v. First Options of Chicago, Inc., 72 F.3d 1294, 1298-99 (7th Cir. 1995), the Seventh Circuit Court of Appeals rejected the "same transaction or occurrence" test for determining when supplemental jurisdiction may be exercised over a claim. Instead, the Seventh Circuit Court of Appeals interpreted the terms "same case or controversy" to implicate an extremely broad grant of jurisdictional power under the Constitution of the United States:

Section 1367 grew out of a recommendation by the Federal Courts Study Committee ("the Committee") that Congress codify the supplemental jurisdiction of the federal courts. The Committee viewed the Supreme Court's decision in Finley v. United States, 490 U.S. 545 [] (1989), which limited the federal courts' supplemental jurisdiction over pendent party claims, as undermining supplemental jurisdiction generally. Federal Courts Study Committee, Working Papers and Subcommittee Reports 552-56 (July 1, 1990). Although the Committee recognized that limiting supplemental jurisdiction would reduce the caseload of the federal courts, such a reduction, in its opinion, would be undesirable because it would force a litigant to choose from undesirable alternatives. The litigant could bring his entire case in state court, assuming that the state's joinder rules permitted the federal claim to be heard; but this course could deprive the federal forum of the opportunity to hear important questions of federal law. Alternatively, the litigant could split his case between the state and federal courts, thereby wasting resources with dual litigation and creating complex questions of issue preclusion. Id. at 556-58 []. The Committee therefore recommended that Congress expressly authorize the federal courts to exercise supplemental jurisdiction. Id. at 559 [].

The statutory language proposed by the Committee would have authorized supplemental jurisdiction over any claim arising out of the same "transaction or occurrence" as a claim within federal jurisdiction. Report of the Federal Courts Study Committee 47 (April 2, 1990). This language was contained in the original House version of the bill. The final version, significantly, rejected the "transaction or occurrence" standard for determining the scope of supplemental jurisdiction. Rather, the enacted statute authorizes supplemental jurisdiction coextensive with the "case or controversy" requirement of Article III.

Unlike the situation with respect to the district courts' diversity jurisdiction, there is no gap, in the case of supplemental jurisdiction, between constitutional limitations and the statutory authorization. The statute's language clearly authorizes the district courts to exercise jurisdiction to the full extent of Article III's "case or controversy" requirement. Brazinski, 6 F.3d at 1181. The legislative history of § 1367 confirms that Congress intended to authorize the full constitutional limit of supplemental jurisdiction. This court has previously recognized that, through § 1367, Congress has made the two coextensive. In Brazinski, we wrote:

> The statute extends the jurisdiction of the federal district court to all claims sufficiently related to the claim on which its original jurisdiction is based to be part of the same case or controversy within the meaning of Article III of the Constitution. If a claim is close enough to the federal (or other) claim that confers federal jurisdiction to be part of the same case, there is no

16

constitutional bar to the assumption of federal jurisdiction over the claim, because Article III confers federal jurisdiction over cases or controversies rather than over claims; and the new statute goes to the constitutional limit.

Id. Although the statute grants the full extent of Article III's jurisdiction to the district courts, it does not attempt to define explicitly the outer limits of that constitutional limitation on jurisdiction. In <u>Ammerman v. Sween</u>, 54 F.3d 423 (7th Cir.1995), we described this limitation in these terms:

> [J]udicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative facts. A loose factual connection between the claims is generally sufficient.

Id. at 424 (citations omitted).

Id. The Third Circuit Court of Appeals adopted a narrower definition of "same case or controversy" in <u>HB General Corp. v. Manchester Partners, L.P.</u>, 95 F.3d 1185, 1198 (3$^d$ Cir. 1996), requiring the claims over which the court has original jurisdiction and the other claims to "share significant factual elements."

Unlike the Third, Sixth and Seventh Circuit Courts of Appeals, the First Circuit Court of Appeals has chosen not to modify the test of "same case or controversy" set out in <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 725 (1966), that the claims of pendant parties will be part of the same case or controversy only if they grow out of a common nucleus of operative fact. <u>Penobscot Indian Nation v. Key Bank of Maine</u>, 112 F.3d 538, 563-64 (1st Cir. 1997). The Eleventh Circuit Court of Appeals described the relationship between § 1367 and <u>Gibbs</u> in <u>Palmer v. Hospital Authority of Randoph County</u>, 22 F.3d 1559, 1563 (11th Cir. 1994):

> Section 1367 codifies the concepts previously known as pendent and ancillary jurisdiction. Prior to this statute, the primary source of guidance for the exercise of pendent claim jurisdiction was <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 [] (1966). <u>Gibbs</u> divided the analysis into two sections: the power of a federal court to exercise pendent claim jurisdiction, and its discretion not to do so despite having the power. Id. at 725-26, 86 S.Ct. at 1138-39.
> Section 1367 retains the same dichotomy, though its scope is somewhat different than the <u>Gibbs</u> tests. Under section 1367(a), unless section 1367(b) or (c)

> applies, the district court "shall have" supplemental jurisdiction over both additional claims and additional parties when those claims "are so related to claims in the action within [the] original jurisdiction [of the court] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

The Eleventh Circuit has subsequently concluded that a claim over which the court does not have original jurisdiction is part of the "same case or controversy" as claims over which the court does have original jurisdiction when "the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996).

As in McGrew, the claims of the various putative class members and the named plaintiff are only joined together for purposes of litigation convenience, not because they share any factual contiguity or sameness. The events leading to each putative class member's claim are entirely discrete and evidence relating to the financing of each putative class member's automobile will be different. The sole similar occurrence, and the one around which substantial legal debate will be centered, is a singular knowledge by Chrysler Financial that its financing agreements were fraudulent. However, the issue of knowledge of fraud alone will not make the events giving rise to each putative class member's claim sufficiently similar to be of the same case or controversy as the claims of the putative class members over which this court has original jurisdiction.

> Although a common question of law is shared[,] . . . this does not transform the factually independent events into a single case or controversy under Article III. If it were otherwise, a plaintiff or set of plaintiffs could define the contours of an Article III case or controversy by careful formulation of a common question of law or fact.

McGrew, CV 96-PT-3104-E at 5. Since the claims by the named plaintiff and class of claimants she purports to represent against both defendants are being REMANDED, it would be inappropriate for the named plaintiff to represent both putative classes. Plaintiff's counsel is given thirty (30) days to substitute a class representative for the class remaining here. That substituted representative should not be a member of the putative class whose claims are being remanded.

This ___ day of August 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

19